**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

**EVA PIZZARELLI,**
    *Plaintiff,*

**v.**                                                                 **Civil Action No. 1:26-cv-**

**TOWN OF CUMBERLAND,** by and through its
its Mayor **JEFFREY MUTTER**,
**CUMBERLAND POLICE DEPARTMENT,**
**MATTHEW BENSON,** individually and in his
official capacity as Chief of the Cumberland Police
Department, **BRANDON M. CORREIA,**
individually and in his official capacity as Sergeant
of the Cumberland Police Department, and
**JACK S. HALLORAN**, individually and in his
official capacity as Patrolman of the
Cumberland Police Department,
    *Defendants.*

## COMPLAINT AND JURY CLAIM

1. This is a civil rights action arising out of the unlawful detention, arrest and prosecution of the Plaintiff, Eva Pizzarelli ("Ms. Pizzarelli") a citizen of the United States and of the State of Rhode Island, against the ***Town of Cumberland*** by and through its ***Mayor Jeffrey Mutter***, the ***Cumberland Police Department ("CPD")***, ***Matthew Benson***, in his official capacity as Chief of the CPD, ***Brandon M. Correia***, in his official capacity as Sergeant of the CPD, and ***Jack S. Halloran***, in his official capacity as Patrolman of the CPD.

2. Defendants, acting under color of law, illegally detained, interrogated, and humiliated Ms. Pizzarelli, held her in custody for over six hours, and then prosecuted her relentlessly, requiring her to attend eleven in-person court hearings[1] in six months before finally dismissing[2] all charges on the morning of trial and confirming what should have been clear from the outset -- their incomplete investigation resulted in the arrest and prosecution of the wrong person.

---

[1] See Docket for Case No. 61-2025-02913, State of RI ex rel Town of Cumberland vs. Eva Pizzarelli, attached as Exhibit A.

[2] See Dismissal Stipulation for 61-2025-02913, Signed and Dated October 14, 2025, attached as Exhibit B.

3. At all relevant times, the individual Defendants were acting pursuant to policies, practices, customs, and/or directions of the Town of Cumberland and the Cumberland Police Department, or in the absence of adequate training and supervision regarding the investigation, arrest, and prosecution of criminal charges. The Town, the Mayor and the Chief of Police are all, therefore, responsible for the constitutional violations alleged herein, which were a foreseeable consequence of their collective failure to properly train, supervise, and control its officers.

## JURISDICTION

4. This action is brought for damages pursuant to 42 U.S.C. §§ 1981, 1983, 1988 and the Fourth, Fifth, Sixth and Fourteenth Amendments of the Constitution of the United States and the corresponding articles of the Constitution of the State of Rhode Island.

5. This Honorable Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343(a), as this action arises under the Constitution and laws of the United States and seeks redress for the deprivation of civil rights.

6. This Honorable Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. §§ 1367.

7. The amount in controversy exceeds one hundred thousand dollars ($100,000.00) excluding interests and costs.

## VENUE

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in the County of Providence, State of Rhode Island, including Plaintiff's arrest, detention, and criminal proceedings.

## PARTIES

9. Plaintiff, *Eva Pizzarelli*, is a resident of the State of Rhode Island.

10. Defendant *Town of Cumberland* ("the town") is a municipality in the County of Providence, State of Rhode Island and is sued by and through its *Mayor Jeffrey Mutter.*

11. Defendant *Cumberland Police Department* ("CPD") is a law enforcement agency with jurisdiction within, and subject to the direct control of, the Town of Cumberland.

12. Defendant *Matthew Benson* ("Defendant Benson") is the Chief of the Cumberland Police Department and is sued both individually and in his official capacity.

13. Defendant *Brandon M. Correia* ("Defendant Correia") is a Seargeant of the Cumberland Police Department and is sued both individually and in his official capacity.

14. Defendant *Jack S. Halloran* ("Defendant Halloran") is a Patrolman of the Cumberland Police Department and is sued both individually and in his official capacity.

## FACTUAL ALLEGATIONS

15. On March 26, 2025, Defendant Halloran was on duty and patrolling Broad Street in the town of Cumberland, Rhode Island.

16. At about 10:05am, Defendant Halloran witnessed a gray Volkswagen bearing Rhode Island plate #4J570 traveling north on Broad Street fail to signal a turn.

17. Defendant Halloran attempted to initiate a traffic stop of this vehicle.

18. The vehicle did not stop and instead accelerated, crossing the state line into Attleboro, Massachusetts at a high rate of speed while allegedly failing to obey multiple traffic signals and traffic control devices.

19. Defendant Halloran terminated his pursuit at approximately 10:07am, consistent with instructions from dispatch.

3

20. Defendant Halloran later reported he had a "clear view" of the driver; however, his description of the driver was limited to a general category: "white, middle-aged woman, with red hair" and contained no specific identifying features or any additional detail about the driver.

### *Beginning the Investigation into Identity of Driver*

21. During the course of the investigation, Defendant Correia became aware that the vehicle and license plate in question were registered to a 73-year-old disabled veteran residing in South Kingstown, Rhode Island named Gerald Minasian[3].

22. Ms. Pizzarelli has no association to Mr. Minasian nor has she ever met him.

23. Defendant Correia reviewed individuals associated with the vehicle, including persons with connections to the vehicle via prior traffic stops, ownership records and other databases.

24. That review identified an individual named "Kevin Colon" as someone associated with the vehicle in question in the past.

25. Defendant Correia next searched Facebook for "Kevin Colon" and selected one of the profiles returned by his search results. Defendant Correia then reviewed that individual's friends list.

26. During the review of that "friends list," Defendant Correia identified a Facebook profile containing a photograph of a white woman with red hair.

27. At that time, Defendant Correia had not personally observed the driver of the vehicle yet, based on the limited descriptive information available from his investigation, believed this photo to be of the driver of the vehicle during the incident in question.

28. At the time of the investigation, in March/April of 2025, Ms. Pizzarelli had a Facebook profile which did feature an older photograph of herself with red hair.

29. Ms. Pizzarelli, however, dyed her hair brown on February 4, 2025 – a full 7 weeks before the March 26 incident and ***did not have red hair*** during the incident in question.

---

[3] See RIDMV Registration Inquiry Dated August 20, 2025, attached as Exhibit C.

30. Defendant Correia forwarded the Facebook photograph of Ms. Pizzarelli to Defendant Halloran and advised him the individual in this photo was "associated" with the suspect vehicle.

31. Immediately after receiving the photograph, Defendant Halloran reported he was able to confirm the woman in the photo provided to him was the same woman[4] he observed driving the vehicle during the incident in question.

32. Defendant Correia further reported having secured footage from a Flock camera and concluded, in his opinion, the driver in the footage "matches" Ms. Pizzarelli's driver's license photo[5].

33. Defendant Halloran then prepared a criminal complaint charging Ms. Pizzarelli with reckless driving and eluding police among other traffic offenses and obtained a warrant for her arrest.

34. Upon information and belief, no other suspects were identified or investigated in relation to this incident, nor was the registered owner of the vehicle ever contacted or questioned.

35. The identification of Ms. Pizzarelli as the driver was based on the Facebook photograph described above and limited descriptive information initially provided during the investigation.

### *Failure to Establish Probable Cause*

36. At no point prior to seeking an arrest warrant did Defendants possess reliable evidence establishing probable cause that Ms. Pizzarelli was the operator of the vehicle involved in the incident.

37. The identification of Ms. Pizzarelli was based primarily on a generic description of a "white, middle-aged woman with red hair," and a single social media photograph obtained through an unrelated investigative search.

38. Defendants did not obtain or document any specific identifying characteristics of the driver, including the height, weight, facial features, or other distinguishing traits, nor did they conduct a photo array, lineup, or other independent identification process.

---

[4] See CPD Report #25-533-OF, Narrative For Patrolman Jack S Halloran, attached as Exhibit D
[5] Id.

39. Defendants also did not contact or interview the registered owner of the vehicle or confirm whether Ms. Pizzarelli had any connection to that individual or to others associated with the vehicle, including Kevin Colon.

40. Defendants did not obtain any independent corroborating evidence linking Ms. Pizzarelli to the vehicle or the alleged incident prior to seeking a warrant.

41. Notwithstanding the deficiencies in the investigation, Defendants represented that they had positively identified Ms. Pizzarelli as the driver of the vehicle and proceeded to seek and obtain a warrant for her arrest.

### *Detention of Ms. Pizzarelli*

42. On April 8, 2025, East Providence Police stopped Ms. Pizzarelli for an alleged traffic violation and, upon learning of an outstanding warrant issued for her out of the town of Cumberland, arrested Ms. Pizzarelli on that warrant.

43. Ms. Pizzarelli was then transported to the Cumberland Police Department.

44. While in custody of the CPD, Defendants questioned Ms. Pizzarelli regarding her driving, an individual named "Gerald," and prior personal associations.

45. Ms. Pizzarelli stated she did not understand the basis for these questions and denied any involvement or knowledge of the incident in question.

46. When shown a photograph of the Volkswagen, Ms. Pizzarelli again denied any knowledge of the vehicle or the alleged incident.

47. At the time of her arrest by East Providence police, Ms. Pizzarelli **_was not_** driving the Volkswagen involved in the incident in question.

48. During questioning, Defendant Halloran stated, "Now that I see you in person, I am 1,000% sure it was you."

49. Defendant Halloran further stated, "***Relax. Only a misdemeanor. You'll have a day in court.***"

50. Defendant Halloran also referenced the timing of Ms. Pizzarelli's birthday, sarcastically and repeatedly stating, "Happy Birthday," while she remained in custody.

51. Ms. Pizzarelli was booked, processed, and released after over six hours in custody.

### *Prosecution of Ms. Pizzarelli*

52. Ms. Pizzarelli was subject to pending criminal proceedings arising from Defendants' actions from March 26, 2025 through October 14, 2025, a period of approximately 202 days, when all the charges were dismissed.

53. In addition to the criminal charges, Ms. Pizzarelli received related traffic citations that resulted in a temporary suspension of her driver's license.

54. As a result, Ms. Pizzarelli was required to contact the Rhode Island Division of Motor Vehicles to address the suspension and restore her driving privileges, causing her additional time, loss, stress and inconvenience.

55. As a direct and proximate result of Defendants' conduct, Ms. Pizzarelli suffered emotional distress, humiliation, anxiety, financial hardship, and loss of liberty and reputation.

## COUNT 1

### CIVIL RIGHTS VIOLATION UNDER 42 U.S.C. §1983
### ALL DEFENDANTS
*(False arrest and Unreasonable seizure)*

56. Plaintiff incorporates by reference paragraphs one (1) through fifty-five (55) as if fully set forth herein.

57. Defendants caused Plaintiff to be seized pursuant to a warrant that was not supported by probable cause.

58. The warrant application relied on an identification of Plaintiff that was unreliable, uncorroborated, and derived from an inadequate and incomplete investigation.

59. Defendants omitted material facts from the warrant application, including the absence of corroborating evidence linking Plaintiff to the vehicle and the lack of any meaningful connection between Plaintiff and the registered owner or known associates of the vehicle.

60. As a result, the warrant was issued without probable cause and in violation of the Fourth Amendment to the United States Constitution, as applied to the States through the Fourteenth Amendment.

61. As a direct and proximate result of Defendants' actions, Plaintiff was unlawfully arrested, detained, and deprived of her liberty.

62. Plaintiff suffered damages including loss of liberty, emotional distress, reputational harm, and financial injury.

## COUNT 2

### CIVIL RIGHTS VIOLATION UNDER 42 U.S.C. §1983
### ALL DEFENDANTS
*(Malicious Prosecution)*

63. Plaintiff hereby incorporates paragraphs one (1) through sixty-two (62) herein.

64. Defendants initiated and continued criminal proceedings against Ms. Pizzarelli without probable cause.

65. Defendants failed to conduct a reasonable or adequate investigation into the identity of the driver, the ownership of the vehicle, or any corroborating evidence linking Plaintiff to the alleged offense.

66. Defendants continued to pursue criminal charges against Plaintiff for approximately six months and through for eleven separate court appearances despite the absence of evidence linking Ms. Pizzarelli to the alleged offense.

67. Ms. Pizzarelli has no relationship; family, biological, or otherwise to the registered owner of the vehicle in question or to any individuals associated with the incident.

8

68. Defendants acted with reckless disregard for the truth and for Ms. Pizzarelli's constitutional rights in initiating and continuing the prosecution.

69. The proceedings were terminated on October 14, 2025 when the charges against Plaintiff were dismissed.

70. As a direct and proximate result of Defendants' actions, Plaintiff suffered deprivation of liberty, emotional distress, reputational harm and financial injury.

## COUNT 3

### NEGLIGENCE
### Defendants Town of Cumberland, Mutter, CPD, Benson
*(Failure to supervise)*

71. Plaintiff hereby incorporates paragraphs one (1) through seventy (70) herein.

72. Defendants Town, CPD, Mutter and Benson maintained policies, practices, or customs that permitted and/or failed to prevent officers from identifying suspects based on using unreliable and uncorroborated social media searches and other non-verified investigative methods.

73. Defendants failed to adequately train and supervise officers regarding constitutional requirements for probable cause, including the need to corroborate identification evidence and avoid reliance on unverified or incomplete investigative leads.

74. The foregoing failures reflect deliberate indifference to the constitutional rights of individuals who are foreseeable subjects of criminal investigation and arrest within Cumberland.

75. As a direct result of these policies and failures, Defendants Correia and Halloran relied on an unverified social media image and incomplete investigative information in identifying Ms. Pizzarelli and initiating criminal proceedings against her.

76. These policies, customs, and failures were a moving force behind Ms. Pizzarelli's unlawful arrest, prosecution, and deprivation of liberty.

9

## COUNT 4

### FALSE IMPRISONMENT
### ALL DEFENDANTS

77. Plaintiff hereby incorporates paragraphs one (1) through seventy-six (76) herein.

78. Defendants caused Ms. Pizzarelli to be detained and confined pursuant to a warrant that was not supported by probable cause.

79. Ms. Pizzarelli was aware of her detention and was not free to leave due to the authority exercised by Defendants.

80. Ms. Pizzarelli did not consent to any such detention or confinement of her person.

81. The detention was unlawful and not privileged under applicable law.

82. As a direct and proximate result of Defendants illegally detaining Ms. Pizzarelli, she has suffered serious and continued mental anguish, anxiety and distress.

83. Ms. Pizzarelli re-alleges paragraphs one (1) through eighty-two (82) herein.

### DAMAGES

84. As a direct and proximate result of Defendants' conduct, Ms. Pizzarelli suffered damages including:

     a. Loss of liberty, including detention for more than six (6) hours;

     b. The burden of criminal proceedings lasting approximately 202 days;

     c. Multiple court appearances requiring time, expense, and disruption to her daily life;

     d. Temporary suspension of her driver's license

     e. Economic losses, including out-of-pocket costs

     f. Emotional distress, anxiety and humiliation

     g. Reputational harm

10

**WHEREFORE,** Plaintiff, Eva Pizzarelli, respectfully requests this Honorable Court enter judgment jointly and severally against the Defendants Town of Cumberland, by and through its Mayor, Jefferey Mutter, Cumberland Police Department, Matthew Benson, Brandon Correia, Jack Halloran:

     a. Compensatory Damages in the amount of $250,000

     b. Punitive Damages in the amount of $500,000

     c. Attorneys Fees pursuant to 42 U.S.C. § 1988

     d. Such other and further relief as this Court may deem just and appropriate.

### PLAINTIFF DEMANDS A TRIAL BY JURY

Respectfully Submitted,

***Plaintiff, Eva Pizzarelli***
By and through Counsel,

*/s/ Jose F. Batista*

Jose F. Batista, Esq. #9449
The Law Office of Jose F. Batista, LLC
225 Dyer Street, 4th Floor
Providence, RI 02903
Tel: 401-415-0151
Dated: June 15, 2026        Email: j.f.batista1@gmail.com